Evelyn J. Klein v. Commissioner.
Klein v. Commissioner
Docket No. 56316.
United States Tax Court
T.C. Memo 1957-176; 1957 Tax Ct. Memo LEXIS 71; 16 T.C.M. (CCH) 788; T.C.M. (RIA) 57176; September 23, 1957
*71 Petitioner's husband died March 4, 1952. Approximately 11 months before his death he took out $100,000 of life insurance with the petitioner as beneficiary. Petitioner possessed all the incidents of ownership in $50,000 of the term insurance included in the insurance taken out by decedent. Respondent increased decedent's gross estate by this latter $50,000 on the ground that "Estate has not furnished proof that premiums were paid by widow with her own funds" and also determined petitioner was liable as transferee for the deficiency in estate tax. On the evidence, held, petitioner paid the premiums on the $50,000 of insurance in question. Held, further, since there is no deficiency, petitioner is not liable as transferee. L. Eugene McNatt, Esq., for the petitioner. Robert B. Kollen, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion ARUNDELL, Judge: Respondent determined petitioner was liable as a transferee of property of the Estate of Robert S. Frolkis for a deficiency in estate tax of $1,880. The only issues are whether the respondent erred in including in the decedent's gross estate $50,000 of life insurance proceeds on the ground *72 that "Estate has not furnished proof that premiums were paid by widow with her own funds" and whether petitioner is liable as a transferee for the deficiency resulting from such inclusion. Findings of Fact Petitioner is the widow of Robert S. Frolkis (sometimes referred to herein either as the decedent or as Frolkis) who died on March 4, 1952. Prior to his death, Frolkis operated the Frolkis Trucking Company, an individual proprietorship. At the time of his death there were in force and effect various policies of insurance on the life of Frolkis aggregating $152,500. Five of the policies of insurance on the life of Frolkis in a total face amount of $50,000 were written in such form that at the time of his death the decedent possessed no incidents of ownership therein exercisable either alone or in conjunction with any other person. All of such incidents of ownership were owned by petitioner. Petitioner was beneficiary under the five insurance policies and as such formally exercised various rights under the policies upon the death of her insured husband. Petitioner has been receiving the proceeds of the policies in accordance with the elections made by her. Some time shortly before *73 April 1951 Frolkis applied to the Metropolitan Life Insurance Company for the issuance on his life of ten $10,000 term basis insurance policies. The total annual premium for all of the 10 policies of term insurance amounted to approximately $969.30. At the time he submitted his application for the 10 term insurance policies, Frolkis was unable to make the payment of $969.30. Negotiations for these policies originated with T. Wallace Hawkes, an agent for Metropolitan, and were had with both Frolkis and his wife. Hawkes was a neighbor and friend of the Frolkis family. Petitioner had a source of funds independent of her husband. Hawkes was told by both petitioner and Frolkis that petitioner had an income sufficient to pay the premiums. The understanding was that petitioner was to pay the premiums on the five policies on which she was to have all the incidents of ownership. Each of these five policies was a 5-year term policy and called for an annual premium of $94.80, or a total of $474 for the five policies. In order to complete the sale of all 10 policies, Hawkes offered to execute a note and borrow the amount of the total annual premium payment of approximately $969.30 which was *74 to accompany the application. Frolkis accepted the offer and he endorsed the note that the agent had signed as maker. Petitioner did not endorse the note. Hawkes took the note to an official of the First State Bank of Albany, Georgia, who agreed on behalf of the bank to make the loan. The bank later issued a cashier's check in the amount of $969.30 in favor of Metropolitan Life Insurance Company. The Metropolitan Life Insurance Company refused to issue ten $10,000 term policies as Frolkis had applied for but instead agreed to issue seven $10,000 term policies and three $10,000 ordinary life policies. The substitution of the three ordinary life policies resulted in an increase in the total premiums in the approximate amount of $500. Hawkes then contacted Frolkis about the increased premiums and Frolkis handed the agent about $500 in cash which he had obtained from petitioner. When the note for $969.30 became due, petitioner furnished Frolkis $500 in cash which enabled Frolkis to pay off the note, together with some interest, by the issuance of two checks, one dated May 30, 1951, in the amount of $500, and one dated August 6, 1951, in the amount of $473.99. The five policies *75 of life insurance here in question were issued on April 4, 1951. Only one premium had been paid when the policies matured. The one and only premium payment on each of the five policies of insurance here in question was paid by petitioner. Opinion Since it is stipulated that at his death Frolkis possessed no incidents of ownership in the five policies of life insurance here in question, the proceeds of such policies are includible in decedent's gross esttate under section 811(g)(2) of the Internal Revenue Code of 1939[1] only if the decedent paid the premiums on such policies. The respondent determined that the decedent paid the premiums but petitioner contends she paid them. *76 Regarding this question of fact as to who paid the premiums on the five policies here in question, petitioner offered her own deposition in which she testified at some length that Hawkes was their next-door neighbor; that prior to 1951 she and her husband had taken out through Hawkes two straight life policies of $10,000 each; that early in 1951 Hawkes often dropped by their house to see her husband and, on occasion, would discuss with her the advantages of taking out more insurance; that she herself was very much interested in getting additional insurance on her husband's life; that they had two young sons; and that Hawkes suggested that she take out $50,000 worth of term insurance on the life of her husband, and that her husband take out another $50,000. These suggestions finally culminated, after considerable negotiations between petitioner, Hawkes, and the decedent, in the 10 policies for $10,000 each referred to in our findings, seven of which were term insurance and three ordinary life. All of the incidents of ownership in five of the seven term policies were in petitioner and it was understood she was to pay the premiums on these five policies, which amounted to $474. We *77 are satisfied from the evidence that petitioner, and not the decedent, paid the premiums on the five policies here in question, which amounted to $474, and we have so found as a fact. Petitioner actually turned over to Frolkis $1,000 in cash which Frolkis used in paying the premiums on all 10 policies in the total amount of approximately $1,469.30. As to this money, petitioner testified "When I gave the money to my husband it was with the express purpose that it was to be applied to the policies that I owned." It follows that the respondent erred in including the five policies owned by petitioner in the decedent's gross estate and that there is no deficiency in estate tax and, hence, no transferee liability against petitioner. Decision of no transferee liability will be entered for the petitioner. Footnotes
1. SEC. 811. GROSS ESTATE. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States - * * *
(g) Proceeds of Life Insurance. - * * *
(2) Receivable by other beneficiaries. - To the extent of the amount receivable by all other beneficiaries as insurance under policies upon the life of the decedent (A) purchased with premiums, or other consideration, paid directly or indirectly by the decedent, in proportion that the amount so paid by the decedent bears to the total premiums paid for the insurance * * *↩